[L. A. No. 2279. Department One.—December 15, 1908.]

In the Matter of the Estate of JACOB GRUENDIKE, Deceased. CHARLES D. ELFERS et al., Appellants.

WILL—RULES OF CONSTRUCTION—INSUFFICIENT DESIGNATION OF BENEFICIARY.—A will must be so construed as to give every expression some effect, rather than so as to make any expression inoperative. If, in applying a will, it is found that no person exactly answers the description of the beneficiary, any omission in such description must be corrected if the error of omission appears from the context or from extrinsic evidence.

ID.—EXTRINSIC EVIDENCE TO IDENTIFY BENEFICIARY—WIFE OF NEPHEW
   CONSTRUED TO MEAN DIVORCED WIFE.—Where a testator by his will
   left a legacy to the wife of a specified nephew, who had no wife
   either at the time of the execution of the will or at any subsequent
   time prior to the death of the testator, the identity of the person
   intended by the testator under the designation of his nephew's wife
   may be established by extrinsic evidence; in the present case, the
   divorced wife of such nephew is held to be the person intended as
   beneficiary.

APPEAL from a decree of the Superior Court of San
Diego County distributing the estate of a deceased person.
N. H. Conklin, Judge.

The facts are stated in the opinion of the court.

L. L. Boone, for Appellants.

Charles C. Boynton, and H. E. Doolittle, for Respondent.

SHAW, J.—This is an appeal from a part of the decree of
final distribution of the estate of Jacob Gruendike, deceased.

The appeal concerns the interpretation of the third clause of
his will. The testator was a bachelor. He was over eighty years
of age at the time of his death and left surviving a brother
and three sisters and a large number of nephews and nieces,
the appellant Abbott being one of the nephews. He left an
estate of the value of something near three hundred thousand
dollars. After providing for the burial of his body and giv-
ing a legacy of a thousand dollars to his nephew Edwin Phil-
lips, he devised the residue of his estate by the third clause
of the will. This clause provides that the residue shall be
equally divided between his brothers and sisters and all of
his nephews and nieces living at the time of his death, each to
take *per capita* and as a class, that is to say, a nephew or niece
was to take the same share as a sister or brother. The ap-
pellant Abbott, being one of the nephews, the effect of this
clause, if it had not been qualified, would be to vest in him an
equal share in the residue with the other nephews and nieces,
brothers and sisters. The will, however, in the last sentence
of the third clause provides with respect to Frank W. Abbott
as follows: "The proportion going under this paragraph to

my nephew, Frank Abbott, is to be divided into parts, one third (1-3) to be paid to him, one third (1-3) to his wife, and one third (1-3) to his child." The appellant Elfers is the assignee from Frank Abbott of all of the estate and property covered by the phrase "one third to his wife" in the above-quoted provision of the will.

Upon the face of the will this provision is entirely clear. It divides the portion going to Frank Abbott into three parts, giving one part to him, another to his wife, and another to his child. It appeared, however, upon the hearing, that, at the time the will was made and at the time of the death of the deceased, Abbott had no wife. The fact was that he had been married in the year 1883 to the respondent, Effie A. Smith, and that in the year 1893 she obtained a divorce from him and afterwards married one Smith. Frank W. Abbott had never been married to any other person at the time of the death of the testator. The court decided that the person intended in the provision of the will above quoted by the term, "his wife," was the respondent, Effie A. Smith, and distributed to her one third of the proportion otherwise going to Frank W. Abbott as a nephew. The appeal is from this portion of the decree.

To explain the meaning of this phrase in the will and clear up the latent ambiguity it was shown by extrinsic evidence that the deceased lived in the county of San Diego, that he knew of the marriage of Abbott and the respondent, Effie A. Smith, that he had visited with them in Merced County some years prior to the divorce, that shortly after the divorce was granted in 1893, Abbott lived with him in San Diego for several months, was employed by him on one of his ranches, and that he was then informed by Abbott of the fact that Abbott had been divorced from his wife. The date of the execution of the will does not appear in the record, but it affirmatively appears that it was made long after the divorce and after the subsequent marriage of the divorced wife of Abbott, Effie A. Smith. Evidence was also given for the same purpose, on behalf of the appellants, showing that he had been informed that Abbott also intended to contract another marriage, but there is no evidence that the testator was ever informed or believed that such marriage had taken place, and in fact no such marriage had occurred. Under these circumstances it is argued that, since the testator knew that she was not then the

wife of Abbott, he could not have referred to her as such, and could not have intended her by that reference.

The fact that she was not then, in fact, the wife of Abbott is not conclusive as to the intention of the testator to designate her by the phrase "to his wife." It is the testator's intention which is to be ascertained and which must prevail. He was over eighty years old at the time he made the will. The child referred to in the clause under consideration was the only child of Frank Abbott and the former wife, and he had been in the custody of his mother. It is not surprising that aged members of a family, in speaking of the divorced wife of a nephew who has not remarried, should refer to her as the wife of such nephew. The other members of the family, living with or near the testator, often referred to her as "Frank Abbott's wife." She had been so designated by them in his presence, but there is no evidence that he had thus described her. The provision itself indicates that, in the estimation of the testator, the character and family relations of Abbott were different from those of the other relatives mentioned, else he would not have thus divided and apportioned that particular legacy. The others were not thus treated. The same sentence refers to the boy as "his child," meaning the child of Abbott. As the testator's mind, for the time being, reverted to the situation of Frank Abbott, and became imbued with the desire to divert a part of the legacy from Frank and bestow it on those connected with and related to him instead, it would be natural, at his age, that the earlier conditions should vividly return to his memory and that he should refer to the former wife, the only person he had known in that relation, simply as "his wife," and to the only child as "his child." It is presumed that he intended thereby to refer to some person in being, and this is the most obvious and reasonable interpretation deducible from the circumstances and the context.

A will must be so construed as to give every expression some effect, rather than so as to make any expression inoperative. (Civ. Code, sec. 1325.) If, in applying a will, it is found that no person exactly answers the description of the beneficiary, any omission in such description must be corrected, if the error of omission appears from the context, or from extrinsic evidence. (Civ. Code, sec. 1340.) Applying these rules, considering all the circumstances, and viewing the will, as near

as may be, from the situation of the testator, we are of the opinion that the trial court did not err in holding that the person intended by the words "one third to his wife," was none other than Effie A. Smith, the former wife of Frank W. Abbott, and that the apparent omission should be supplied by correcting the phrase in question so as to make it read "one third to his former wife."

The information given to the testator to the effect that Frank Abbott was contemplating a remarriage was communicated to him as mere vague hearsay, and was not likely to impress him seriously. No such marriage in fact occurred. It was shown that such important family matters as a marriage were usually communicated to those members of the family with whom the testator associated. The court below may reasonably have considered the evidence as to this information to be insufficient to prove that the testator believed that Abbott was about to marry again, or had remarried, and, because of such belief, made the provision for the new wife. In view of its decision we must presume that this evidence was rejected or disregarded.

The part of the judgment from which this appeal is taken is affirmed.

Angellotti, J., and Sloss, J., concurred.